# CIVIL COVER SHEET

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
U.S. Securities and Exchange Commission

## DEFENDANTS
Brown Jr., Robert C., Trebor Company; Relief Defendants: Eddings, Duane, CDC Global, Inc., and Wise Investors Simply Excel, LLC

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    San Mateo County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Securities and Exchange Commission
44 Montgomery Street, Suite 2600
San Francisco, CA 94104
(415) 705-2500

08-3517

Attorneys (If Known)

JL, 99

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☑ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☑ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☑ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §78j(b) and 17 C.F.R. §10b-5, 15 U.S.C. §80b-6(1), 15 U.S.C. §80b-6(2)
Brief description of cause:
Fraud by investment adviser in connection with sale of securities

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☑ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE: July 23, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

1  MARC J. FAGEL (Cal. Bar No. 154425)
   MARK P. FICKES (Cal. Bar No. 178570)
2    fickesm@sec.gov
   SUSAN L. LAMARCA (Cal. Bar No. 215231)
3    lamarcas@sec.gov
   JEREMY E. PENDREY (Cal. Bar No. 187075)
4    pendreyj@sec.gov

5  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
6  44 Montgomery Street, Suite 2600
   San Francisco, California 94104
7  Telephone: (415) 705-2500
   Facsimile: (415) 705-2501

FILED
08 JUL 23 AM 9:16
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,   CV 08 Case No. 3517   CW

Plaintiff,

vs.

ROBERT C. BROWN, JR. AND TREBOR COMPANY (AKA TREBOR INVESTMENT COMPANY, TREBOR SEMINARS, TREBOR GROUP AND TREBOR GROUP FUND),

Defendants,

and

DUANE EDDINGS, CDC GLOBAL, INC. AND WISE INVESTORS SIMPLY EXCEL, LLC,

Relief Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**SUMMARY OF THE ACTION**

1. Since at least 2000, Robert C. Brown, Jr. and his sole proprietorship, Trebor Company, also known as Trebor Investment Company, Trebor Seminars, Trebor Group and Trebor Group Fund (collectively, Trebor Company"), misappropriated more than $20 million from hundreds

COMPLAINT

of investors who believed Brown would invest their money in the stock market. Based on his purportedly proven ability to invest successfully, Brown guaranteed returns as high as 100% in as little as eight months. The vast majority of the money Brown raised, however, was never invested in the stock market. Instead, Brown deposited investors' money into accounts that he treated like personal piggy banks, using the money to pay for luxurious personal expenses such as upkeep on his Ferrari, limousine services, and expensive shopping trips with his girlfriend. Brown also transferred hundreds of thousands of dollars to his family members.

2. Brown and Trebor Company violated numerous provisions of the federal securities laws, including the antifraud statutes, by misappropriating investor assets, making materially false and misleading statements in connection with the purchase or sale of securities and perpetrating a fraud on his investors. The Commission seeks to enjoin Brown and Trebor Company from further violations of the securities laws, disgorgement from them of ill-gotten gains, and payment of civil money penalties, as well as preliminary and emergency relief to protect investors. The Commission further seeks disgorgement of all investor funds disbursed to relief defendants Duane Eddings, CDC Global, Inc. and Wise Investors Simply Excel, LLC, and an order freezing their assets.

## **JURISDICTION**

3. The Commission brings this action pursuant to Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d) and 78u(e), and Sections 209 and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9 and 80b-14. This Court has jurisdiction over this action pursuant to Sections 21(d)(3), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa, and Sections 209 and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9 and 80b-14. Defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

4. Venue in this District is proper pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, because a substantial portion of the conduct alleged in this complaint occurred within the Northern District of California and defendants Brown and Trebor Company reside in the District.

## DEFENDANTS

5. Defendant Robert C. Brown, Jr., age 55, resides in Hillsborough, California. Brown acts as an investment adviser by, among other things, receiving financial compensation for investing, or purporting to invest, other peoples' money in stocks and options. Brown is not registered with the Securities and Exchange Commission. He has never been licensed to sell securities.

6. Defendant Trebor Company (Robert spelled backward) is a sole proprietorship owned by Brown and is the name he has used for his "investment group." Referring to Trebor Company, Brown has also used the names Trebor Investment Company, Trebor Seminars, Trebor Group and Trebor Group Fund (collectively, "Trebor Company"). Brown has operated Trebor Company from Vallejo, California, and, more recently, Hillsborough, California.

## RELIEF DEFENDANTS

7. Duane Eddings, age 48, is named as a defendant in this action solely for the purpose of ensuring complete relief. At all relevant times, Eddings was a member of Wise Investors Simply Excel, LLC and president of CDC Global, Inc., and was the registered agent for service of process for both entities. Eddings was also the authorized signatory for bank accounts held by Wise Investors Simply Excel, LLC and CDC Global, Inc.

8. Wise Investors Simply Excel, LLC ("WISE") is named as a defendant in this action solely for the purpose of ensuring complete relief. WISE is a California limited liability company based in Vallejo, California.

9. CDC Global, Inc. ("CDC") is named as a defendant in this action solely for the purpose of ensuring complete relief. CDC is a California limited liability company based in Oakland, California.

## FACTUAL ALLEGATIONS

**A.   Brown Falsely Promised Investors Extraordinary No-Risk Returns.**

10. Starting in at least 2000 and continuing through the present, Brown solicited money from hundreds of investors, telling them he was an expert investor who would invest their money in the "stock market," "stock," or "options."

11. Brown told his investor clients that their investments were "guaranteed" and falsely downplayed the potential risks of investing in stocks and options so that investors believed their investments with him were extremely safe. Brown told investors that his method of trading stocks and options ensured that he could make money in both up and down markets. He also claimed that he had never lost money in the stock market. Brown even told investors that if their investments did not make as much money in the market as he promised, he would pay the difference out of his own pocket.

12. A large number of Brown's investors had no prior experience in investing in securities. Moreover, many of these investors did not have sufficient assets to adequately assume the risks of investing in securities. For example, one investor, who had never invested in securities, was a retiree living on a fixed income. She took out two home equity loans for a total of $200,000 and invested the money with Brown and Trebor Company. After receiving some purported profit payments, Brown stopped making any payments to her. This investor repeatedly asked for her money and Brown and Trebor Company frequently assured her that she would be paid. Despite these promises, Brown never paid her any further returns on her investment. As a result, the bank foreclosed on her two houses.

13. Another investor was a phone company lineman who had no other investments (aside from his 410(k) retirement account) and who was eager to make extra money in order to provide primary care for his two children as well as for three nieces and nephews. At Brown's suggestion, this investor withdrew $10,000 from his 401(k) retirement account. He also borrowed an additional $50,000 by taking out an equity line of credit on his home. He invested the money with Brown. As a result of Brown's failure to pay this investor the promised returns on his investment, the investor had to file for bankruptcy.

14. Brown offered investors two main types of Trebor Company investment "programs," each one promising phenomenal, guaranteed returns. Brown documented the investments in written contracts. First, starting in 2000, Brown offered a "Quarterly" program, which had variable returns on a quarterly basis, minus unspecified fees. By 2004, Brown had changed the variable program to a

1  "24-Month High Yield" investment that promised returns of 63-90% per year, with profits to be paid
2  every four months. Some of these contracts stated that Brown would take a 10% fee.

3      15.    Beginning in 2002, Brown offered "double" agreements where Brown promised to
4  double investor money in 13 or 14 months, with profits to be paid in a lump sum at the end of the
5  term. In 2005, Brown offered a new 24-Month "double" agreement whereby he promised that he
6  would match investors' money with a dollar for dollar "gift" of his own money, thereby instantly
7  doubling their account balance and future returns. In 2006, Brown offered yet another "double"
8  agreement that promised he would double investor money in only eight months. Some investors
9  understood that Brown would take as fees any returns he earned above the promised returns.

10      16.    From October 2007 to January 2008, Brown told investors in e-mail that he was
11  expecting new "accredited lenders" to provide him money that he would be able to use to trade stocks
12  in an attempt to earn profits to pay back investors. In January 2008, Brown claimed to have already
13  received a loan from new lenders that was "generating profits." During this time period, Brown was
14  trading stocks online in brokerage accounts held in the names of others.

15      17.    In June 2008, Brown told a new investor that he would earn the investor 30% to 40%
16  returns <u>per month</u> by investing the investor's money in stocks.

17      18.    At the time Brown promised the phenomenal returns described above, he knew, or was
18  reckless in not knowing, that he had no means to achieve those returns because (as described below)
19  he was using investor money as a personal slush fund instead of investing it in securities. In addition,
20  Brown gave a large amount of investor money to friends and family members, and to other favored
21  investors as purported "returns" on their investments. Finally, Brown had no track record of
22  achieving returns from securities investments remotely close to the returns he promised investors.

23  **B.    Investors Gave Brown More than $20 million to Invest, But Brown Never Invested Most
24         of the Investor Money.**

25      19.    From 2000 to at least 2007, Brown raised in excess of $20 million from investors
26  through his Trebor Company investment programs. Investors deposited their money into multiple
27  accounts Brown used, including his personal accounts, a Trebor Company account, and an account
28  held in the name of WISE.

20. Although Brown promised his investor clients that he would invest their money in the stock market, Brown never even opened a Trebor Company brokerage account. Instead, Brown helped himself to millions of dollars of investor money to pay for lavish personal expenses. For example, Brown frequently used limousine services for trysts with girlfriends or outings to professional football games and concerts. He also spent investor money on his Ferrari, on hotels, and on restaurants. Brown transferred a little over $4.2 million of investor money to his personal brokerage account, but spent a significant portion of that money on personal expenses such as expensive clothes and hotels. He withdrew in cash alone from accounts he controlled more than $3.5 million in investor money.

21. From 2001 to 2005, Brown also used client money that was supposed to have been invested in securities to pay several employees, including family members. For example, Brown paid his son a total of approximately $70,000 in salary and a sister and another relative approximately $35,000 each in salary. Brown's son "worked" for Trebor Company and Brown by learning to research stocks on a computer, though Brown did not use the research that his son performed.

22. As in a classic Ponzi scheme, Brown transferred millions of dollars in investor money to earlier investors, primarily family and friends. Rather than paying out legitimate profits to his clients, in most cases, he transferred the money without ever having invested it. For example, investors regularly deposited money to an account held in the name of Trebor Company, and Brown often wrote checks to other investors out of the account without ever depositing the investor money into a brokerage account. In another example, in September 2005, Brown caused investors to deposit money directly to his son's account and then instructed his son to transfer the money to the accounts of other investors without ever depositing the money into any brokerage account.

23. Brown knew, or was reckless in not knowing, that he was misappropriating client money by spending it on unauthorized, lavish personal expenses and by using money invested from newer investors to pay favored investors purported returns on their investments without ever actually investing their money.

## C.   Brown Misrepresented to Investors What Had Happened to Their Money

24.   Brown never told his clients that he had spent their money on himself or transferred it to other clients. To the contrary, Brown told clients in writing that their investments were earning the returns he had promised. During 2001 to 2005, Brown directed an assistant to prepare and send investors account statements that falsely told them they were earning returns as high as 13.1% quarterly. Similarly, investors in the 24-Month High Yield program were sent statements falsely showing returns of up to 24% every 4 months. Investors in the "double" program were sent statements falsely showing that their account values had doubled in the time period Brown promised. Because Brown and Trebor Company had not actually invested most client money, these statements were false and misleading. In truth, the statements bore no relation to any actual investment performance.

25.   As a result of the false account statements, investors "rolled over" their investments to other programs, or reinvested their supposed profits so that they would "double" again. At the time investors "reinvested" their "profits," Brown never told them he had misappropriated their original principal. Furthermore, as a result of the false account statements investors received, they continued to tell their friends and family about Brown's "successful" programs, which attracted even more investors to his scheme.

26.   By 2005, Brown was unable to repay most of his clients, so he attempted to quell concern about the lack of payments by making further misleading statements to them. He promised several times in letters addressed to investors that checks would be sent out by a date certain, and then when the date passed without investors having received any money, he would make up an excuse and promise a new date. Brown continues to promise investors that their money is coming. In reality, Brown never invested most of the money and spent a substantial part of his clients' money on unauthorized personal expenses or used it to repay favored investors.

27.   Brown concocted elaborate excuses about what had happened to his clients' money. In 2005, Brown told his investor clients in a letter that he would be "dissolving" Trebor Company due to the difficulties that he was encountering in getting their money "due to the Patriot Act." Later, in August 2006, he again wrote a letter to investors claiming the Patriot Act had made it "more than

impossible" to keep his promises. In the letter, Brown falsely stated "you must know that I have never lost any of your capital, nor will I now." In fact, Brown had spent investor money on unauthorized personal expenses or used it to repay favored investors.

28. Brown told clients a variety of stories to explain the delay in getting their money back. For instance, Brown said that he had moved their money to an investment in gold, or that he was investing their money overseas through a group of ministers. He also told clients that he had bought an island, and later told them that he sold the island for millions of dollars.

29. Recently, Brown told his investor clients that he met with the Commission and that the Commission has "cleared" him of all wrongdoing. In fact, Brown appeared before the Commission staff for investigative testimony pursuant to a subpoena. During his testimony, Brown asserted his Fifth Amendment privilege and refused to answer any substantive questions.

D. **WISE and CDC Received Investor Funds.**

30. WISE and CDC, which are controlled solely by Eddings, received and possess money or other assets through defendant Brown and Trebor Company's fraudulent scheme, material misrepresentations and omissions, and have no legitimate claim to them.

31. From 2005 to 2007, investors deposited approximately $8.5 million to an account held in the name of WISE. Eddings is the only signatory for the account. During this time, Eddings transferred more than $240,000 from the WISE account to a CDC account, which he also controls.

32. In September 2005, Brown caused his son to use investor money to cause cashier's checks to be written to CDC totaling more than $135,000.

33. In 2005, Brown transferred $10,000 to Eddings. Also in 2005, Brown caused his son to transfer $41,250 of investor money to Eddings.

### FIRST CLAIM FOR RELIEF

(Violations of Section 10(b) of the Exchange Act
and Rule 10b-5 Thereunder)

34. The Commission hereby incorporates and realleges here paragraphs 1 through 33, above.

35. Defendants Brown and Trebor Company have, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

36. By reason of the foregoing, defendants have directly or indirectly violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### (Violations of Section 206(1) and 206(2) of the Advisers Act)

37. The Commission hereby incorporates and realleges here paragraphs 1 through 33, above.

38. Defendants Brown and Trebor Company, by engaging in the conduct set forth above, directly or indirectly, through use of the mails or the means or instrumentalities of interstate commerce, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities, with scienter, employed devices, schemes, or artifices to defraud.

39. By reason of the foregoing, defendants violated, and unless restrained and enjoined will continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

40. Defendants Brown and Trebor Company, by engaging in the conduct set forth above, directly or indirectly, through use of the mails or the means or instrumentalities of interstate commerce, and while engaged in the business of advising others for compensation as to the advisability of investing in, purchasing, or selling securities, engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon clients or prospective clients.

41.  By reason of the foregoing, defendants violated, and unless restrained and enjoined will continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Enjoin and restrain defendants Brown and Trebor Company, temporarily, preliminarily and permanently, from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, or Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and (2); or from placing orders to buy or sell securities for the accounts of other persons, or from making deposits or withdrawals into or out of the brokerage or bank accounts of other persons, or from entering any transactions whatsoever in or for the brokerage or bank accounts of other persons.

II.

Enter an order temporarily freezing the assets of defendants Brown and Trebor Company and relief defendants Eddings, WISE and CDC.

III.

Order defendants Brown and Trebor Company to provide an accounting and to disgorge their ill-gotten gains in an amount according to proof, plus prejudgment interest thereon.

IV.

Order defendants Brown and Trebor Company to repatriate to the territory of the United States of America all assets and funds held by, or in the name of, or for the benefit of, defendants Brown and Trebor Company.

V.

Order defendants Brown and Trebor Company to pay civil money penalties pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

VI.

Order relief defendants Eddings, WISE and CDC to disgorge their ill-gotten gains in an amount according to proof, plus prejudgment interest thereon.

VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VIII.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated: July 23, 2008

Respectfully submitted:

By: _____
Marc J. Fagel
Susan L. LaMarca
Mark P. Fickes
Jeremy E. Pendrey

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION